# In the United States Court of Federal Claims

VERNON LAMAR JACKSON, SR.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

No. 22-cv-547

Filed: September 19, 2022

*Vernon Lamar Jackson, Sr.*, Louisville, Kentucky, Plaintiff, appearing *pro se*.

*Miles K. Karson*, United States Department of Justice, Washington, D.C., appearing for Defendant.

**MEMORANDUM AND ORDER**

On May 13, 2022, Plaintiff Vernon Lamar Jackson, Sr., appearing *pro se*, filed a Complaint in this Court. *See* Complaint (ECF No. 1) (Compl.). Plaintiff's Complaint is the latest in a series of proceedings relating to the investigation and conviction of former Louisiana Congressman William J. Jefferson. *See United States v. Jefferson*, 674 F.3d 332 (4th Cir. 2012) (*Jefferson I*). In 2009, Jefferson was convicted for bribery and conspiracy, among other federal offenses. *Id.* at 334. Plaintiff was implicated in one of Jefferson's schemes and eventually pleaded guilty to bribing and conspiring to bribe Jefferson. *See United States v. Jackson*, 371 F. Supp. 3d 257 (E.D. Va. 2019). Thereafter, the Supreme Court decided *McDonnell v. United States*, 579 U.S. 550 (2016), which effectively narrowed the definition of an "official act" under federal bribery law. 579 U.S. 550, 575 (2016). After *McDonnell*, the acts upon which Plaintiff was convicted were no longer considered "official acts" under the Supreme Court's interpretation and were therefore not criminal. *Jackson*, 371 F. Supp. 3d at 268-69. Subsequently, Plaintiff successfully petitioned the

United States District Court for the Eastern District of Virginia for a writ of *coram nobis* to vacate his convictions. *Id*. at 262.

Plaintiff seeks redress in this Court for Defendant United States' allegedly improper and unlawful conduct in investigating and prosecuting Plaintiff. Plaintiff's Complaint alleges several of causes of action, including civil conspiracy/collusion, misrepresentation/concealment, fraud, detrimental reliance, violations of Plaintiff's Fifth and Sixth Amendment rights, and unjust conviction under 28 U.S.C. §§ 1495 and 2513. Compl. at 30-50.[1]

Two motions are pending before this Court. The first is Defendant's Motion to Dismiss pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (Rule(s) or RCFC). *See* Defendant's Motion to Dismiss (ECF No. 7) (Mot.). Defendant argues this Court lacks subject matter jurisdiction over Plaintiff's claims. Mot. at 1. The second is Plaintiff's Motion to Change Venue. *See* Plaintiff's Motion to Change Venue (ECF No. 10) (Transfer Mot.). Plaintiff "seek[s] [a] change of venue and transfer [to the United States District Court for the Western District of Kentucky] pursuant to 28 U.S.C. § 1402, 28 U.S.C. § 1404(a) and 28 U.S.C. § 1406(a)." Transfer Mot. at 1, 3. Plaintiff states he "found Federal Statues [sic] that support the federal court judges' ability to transfer cases with jurisdictional defects to the proper venue/jurisdiction, rather than dismissing them." *Id.* at 3. While Plaintiff does not cite the specific statute, this Court interprets Plaintiff's motion as a request to transfer his case to the Western District of Kentucky pursuant to 28 U.S.C. § 1631. *See also* Transcript of Hearing Regarding Plaintiff's Motion to Change Venue (ECF No. 12) (Tr.) at 4:15-20 (Counsel for Defendant agreeing Plaintiff's motion is best interpreted as a motion to transfer under section 1631); *see also Pleasant-Bey v. United*

---

[1] Citations to Plaintiff's Complaint reference the ECF page numbers.

*States*, 99 Fed. Cl. 363, 368 (2011) (*sua sponte* considering possibility of transfer under 28 U.S.C. § 1631).

The Court agrees that it lacks subject matter jurisdiction over Plaintiff's Complaint. However, the Court determines it is in the interest of justice to transfer this action in part to the United States District Court for the Western District of Kentucky. For the reasons discussed in greater detail below, Plaintiff's Motion to Change Venue (ECF No. 10) is **GRANTED in part**. Defendant's Motion to Dismiss (ECF No. 7) is **GRANTED in part** pursuant to Rules 12(b)(1) and 12(h)(3) and is **DENIED in part as MOOT**.

<u>BACKGROUND</u>

I. <u>Plaintiff's Professional Background</u>

According to the Complaint[2], Plaintiff "is currently the Founder, Chairman and CEO of SmartCopper Broadband, Inc., a new company launched for the purpose of re-introducing 'High-speed Broadband Internet Access Services over copper telephone lines into the telecommunications marketplace.'" Compl. at 1-2. Plaintiff was previously the "Founder, Chairman, and CEO of iGate, Inc., a broadband innovation company." *Id.* at 2. Plaintiff "has more than 50 years' experience in telecommunications technology design and implementation;" Plaintiff was previously employed by AT&T and the Regional Bell Operating Companies. *Id.* Plaintiff claims he was "awarded" two U.S. patents relating to his expertise in telecommunications technology.[3] *Id.* at 2-3.

---

[2] When considering a motion to dismiss under Rule 12(b)(1), "a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

[3] *See* U.S. Pat. Nos. 5,537,142 and 6,240,554. Plaintiff is not listed as a named inventor, but both patents are assigned to "iGate Inc."

II.    Plaintiff's Bribery Conviction

In 2000, when Plaintiff was CEO of iGate, he established a professional relationship with Congressman William J. Jefferson.  *United States v. Jefferson*, 289 F. Supp. 3d 717, 722 (E.D. Va. 2017) (*Jefferson II*).  Plaintiff initially solicited Jefferson's support in selling iGate's technology to the U.S. Army.  *Id.*  "[I]mpressed by Jefferson's efforts on his behalf," Plaintiff agreed to hire Jefferson's family consulting firm, ANJ, "to assist with marketing iGate products."  *Id.*; *see also* Compl. at 5.  iGate agreed to pay ANJ $90,000 per year, as well as iGate shares and bonuses. *Jefferson II* at 722.  While ANJ was ostensibly run by Jefferson's wife and daughter, Plaintiff soon realized "he was paying Jefferson to promote iGate technology to customers, including the Army." *Id.*

Plaintiff's and Jefferson's sights shifted to Africa.  *Jefferson II* at 722.  Jefferson traveled to West Africa — Nigeria in particular — to promote iGate's technology to "high-ranking foreign officials."  *Jefferson I* at 343.  Jefferson contacted a Nigerian company called NDTV and brokered an agreement between iGate and NDTV in which NDTV agreed to pay iGate approximately $44 million, including a $6.5 million down payment, for iGate's technology.  *Id.* at 343; *see also* Compl. at 5 ("iGate signed a Business Agreement and Distribution Contract with a Nigerian company named NDTV.").  After the iGate-NDTV deal, iGate increased its payments to ANJ "from five to thirty-five percent of iGate's profits."  *Jefferson I* at 343.  In late 2003 and early 2004, "ANJ collected more than $230,000 in fees from iGate to compensate Jefferson for his efforts in promoting iGate."  *Id.*

The iGate-NDTV agreement unraveled in 2004.  *Id.* at 344; *see also* Compl. at 6 ("In early 2004, because of NDTV's default under the terms of the iGate-NDTV contract, iGate 'terminated' the contract with NDTV.").  Jefferson then brought in a Virginia businesswoman, Lori Mody, to

invest in iGate's West African ventures.  Compl. at 6; *see also Jefferson I* at 344.  Jefferson began promoting the new iGate-Mody partnership, for which he was compensated by both iGate and Mody.  *Jefferson I* at 344-45; *see also* Compl. at 6-8.

Eventually, the iGate-Mody partnership faltered.  *Jefferson I* at 345.  Mody, "concerned that Jefferson was engaged in criminal activity," *Jefferson II* at 723, approached the FBI and "began to cooperate with the FBI and the Department of Justice" in their investigation into Jefferson.  *Jefferson I* at 345.  According to Plaintiff's Complaint, in the summer of 2005 the FBI raided and searched Plaintiff's home.  Compl. at 10-11; *see also Jefferson I* at 346.  Soon after, the United States Attorney's Office in the Eastern District of Virginia notified Plaintiff that he was the subject of a federal criminal investigation relating to Jefferson and offered a "'pre-indictment' plea."  Compl. at 11.  Plaintiff was represented by a public defender.  *Id.* at 12.  Plaintiff contends that despite his desire to avoid pleading guilty, the U.S. attorney and Plaintiff's defense counsel encouraged Plaintiff to "negotiate a plea deal with the AUSA."  *Id.*  Plaintiff pleaded guilty "to bribing and conspiring to bribe [Jefferson] to perform 'official acts' for the benefit of" iGate, in violation of 18 U.S.C. § 371 (conspiracy) and 18 U.S.C. § 201(b)(1)(A) (bribery).  *United States v. Jackson*, 371 F. Supp. 3d 257, 262 (E.D. Va. 2019); *see also* Compl. at 13-15.  Plaintiff was initially sentenced to 60 months and 87 months of incarceration for conspiracy and bribery, respectively, to be served concurrently.  *See Jackson*, 371 F. Supp. 3d at 262; *see also* Compl. at 14.  Jefferson, for his part, was eventually convicted of several crimes, including bribery, and sentenced to 13 years in prison.  *See Jefferson II* at 721, 727.  In recognition of Plaintiff's assistance testifying at Jefferson's trial, Plaintiff's sentence was reduced to 40 months of imprisonment.  *See Jackson*, 371 F. Supp. 3d at 262; *see also* Compl. at 15.  Plaintiff was released from prison in 2010.  Compl. at 15.

III.   <u>Plaintiff's Successful Petition for Writ of *Coram Nobis*</u>

Six years after Plaintiff's release from incarceration, the Supreme Court issued a decision that "altered the legal landscape with respect to the principal element of bribery—the 'official act.'" *Jefferson II* at 721. In *McDonnell v. United States*, the Supreme Court held that the definition of an "official act" only encompassed acts involving "a formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee." 579 U.S. 550, 574 (2016). The Court held that everyday conduct like "[s]etting up a meeting, talking to another official, or organizing an event" is not an "official act" under the federal bribery statute. *Id.*

In light of *McDonnell*, Jefferson petitioned for *habeas corpus* in 2017, arguing the acts for which he was convicted of bribery did not fall within this new definition of "official act." *Jefferson II* at 730, 740-41. Relevant to the present action, the United States District Court for the Eastern District of Virginia concluded the evidence did not "support a finding that Jefferson took 'official acts' in relation to the iGate scheme within the meaning of the bribery statute as clarified by the Supreme Court's opinion in *McDonnell*." *Id.* at 740; *see also* Compl. at 15-16. The district court accordingly granted Jefferson's petition with respect to the iGate-related bribery conviction. *Jefferson II* at 744.

Recognizing what Jefferson's success meant for his own conviction, Plaintiff petitioned for a writ of *coram nobis* in December 2017 to vacate his bribery and conspiracy convictions. *See Jackson*, 371 F. Supp. 3d at 263; *see also* Compl. at 17. Though Plaintiff had long since served his sentence, he alleged that he still endured professional repercussions caused by his criminal conviction. *See* Compl. at 29-30; *see also United States v. Morgan*, 346 U.S. 502, 512 (1954) ("Although the term has been served, the results of the conviction may persist.").

The district court granted Plaintiff's petition. *Jackson*, 371 F. Supp. 3d at 274. The court stated that "if 'the record reveals that neither [the defendant], nor his counsel, nor the court correctly understood the essential elements of the crime with which [the defendant] was charged' in light of a subsequent Supreme Court decision clarifying the elements of the crime, the defendant's guilty plea is constitutionally invalid." *Id.* at 266 (quoting *Bousley v. United States*, 523 U.S. 614, 618 (1998)). Accordingly, because Plaintiff pleaded guilty to bribing Jefferson, when none of the acts Plaintiff allegedly bribed Jefferson to commit were "official acts" under *McDonnell*, "there was not a factual basis for defendant's guilty plea to the charges of bribery of a public official and conspiracy to bribe a public official." *Id.* at 270. The district court thus granted Plaintiff's petition for a writ of *coram nobis*. *Id.* at 274.

The court observed, however, that "to hold that defendant is not guilty of violating the bribery statute in these circumstances is not to express approval of his conduct, which appears to be corrupt[.]" *Id.* at 273. The court noted that Plaintiff's conduct, though not falling within the statutory definition of bribery, "is clearly detrimental to the effective and fair operation of our democratic, representative government and undermines public trust of elected officials." *Id.* at 274.

IV.    <u>Plaintiff's Complaint in this Court</u>

Plaintiff filed his Complaint in the United States Court of Federal Claims on May 13, 2022. Compl. Plaintiff's Complaint alleges Defendant, including several federal law enforcement agencies, "willfully deprive[d] Plaintiff of right(s) and/or privilege(s) protected by the Constitution and/or law(s) of the United States, sounding in tort." Compl. at 1. Plaintiff alleges that an affidavit, filed by Defendant in the U.S. District Court for the Western District of Kentucky in connection with its investigation into Plaintiff, contained "lies and known material misrepresentations."

Compl. at 19 (emphasis omitted). Plaintiff also alleges the affidavit contained "exculpatory material/evidence and impeachable material/evidence." *Id.* (emphasis omitted). Plaintiff further alleges that an alleged affair between Ms. Mody and an FBI agent prejudiced Plaintiff. *Id.* at 21-22. Plaintiff further complains Defendant "had to use lies and misrepresentations in order to investigate and prosecute the case against [him]." *Id.* at 28. Plaintiff contends he experienced financial hardship and has lost business opportunities as a result of his allegedly improper conviction. *Id.* at 29-30.

Plaintiff's Complaint asserts several causes of action, including civil conspiracy/collusion (Compl. at 35-42) relating to Defendant's alleged "lies/material misrepresentations" from Defendant's investigation of Plaintiff/iGate; fraud and misrepresentation/concealment (Compl. at 42-46), causing Plaintiff emotional distress and anguish; detrimental reliance (Compl. at 46-47); violations of Plaintiff's constitutional rights (Compl. at 47-50), including his rights under the Fifth and Sixth Amendments to the U.S. Constitution; and unjust conviction under 28 U.S.C. §§ 1495 and 2513 (*e.g.*, Compl. at 33). With respect to jurisdiction, the Complaint alleges "[t]he United States Court of Federal Claims has jurisdiction in this matter, since defendant(s) being government actors/entities at the relevant time(s), violated federal laws in this matter and issued a 'Target Letter' against the plaintiff without a legal and just cause, but based on an illegal 'skeptical' theory which caused the malicious and unjust prosecution of plaintiff." Compl. at 32.

V.   <u>Plaintiff's Motion to Change Venue</u>

Several weeks after Defendant filed the present motion to dismiss, and after the parties had completed briefing on that motion, Plaintiff filed a Motion to Change Venue. *See* Transfer Mot. Plaintiff's motion requests transfer of his case to the United States District Court for the Western District of Kentucky (Western District of Kentucky). *Id.* at 1. Plaintiff states "[a]fter reading and

understanding the Defendant's motion-to-dismiss . . . that the Plaintiff bears the responsibility of establishing jurisdiction, I began to research the matter and found Federal Statues [sic] that support the federal court judges' ability to transfer cases with jurisdictional defects to the proper venue/jurisdiction, rather than dismissing them." *Id.* at 2-3. Plaintiff cites 28 U.S.C. §§ 1402, 1404(a), and 1406(a) in support of his motion. *Id.* at 3. Plaintiff concludes that "it is in the interest of justice and the interest of all parties . . . that Little Tucker Act suits and Federal Tort Claims Act suits are to be brough [sic] in the judicial district in which the Plaintiff resides." *Id.* at 4.

On September 12, 2022, this Court held a status conference to discuss Plaintiff's Motion to Change Venue and to confirm with Plaintiff his position, as he is proceeding *pro se*. *See* September 8, 2022 Order; Tr. at 1. Plaintiff confirmed he did not believe this Court had jurisdiction over his claims and instead wished to transfer his case to the Western District of Kentucky. Tr. at 3:21-4:3, 7:23-8:7. Plaintiff also confirmed he understood the Court may only transfer claims over which the Western District of Kentucky may have subject matter jurisdiction. *Id.* at 4:4-10. During the status conference, Defendant confirmed its understanding that Plaintiff's Motion to Change Venue is best interpreted as a motion to transfer pursuant to 28 U.S.C. § 1631. *Id.* at 4:15-22. Defendant further agreed that transfer of Plaintiff's tort claims would be in the interest of justice. *Id.* at 5:24-6:13.

## APPLICABLE LEGAL STANDARDS

I.   Subject Matter Jurisdiction

This Court must dismiss claims outside its subject matter jurisdiction. *See* Rule 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). The Tucker Act, which acts as a waiver of sovereign immunity, provides this Court with jurisdiction over "any claim against the United States founded either upon the Constitution,

or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1); *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("[B]y giving the Court of Claims jurisdiction over specified types of claims against the United States, the Tucker Act constitutes a waiver of sovereign immunity with respect to those claims."). The Tucker Act is a jurisdictional statute and does not create any enforceable right against the United States on its own. *Mitchell*, 463 U.S. at 216; *United States v. Testan*, 424 U.S. 392, 398 (1976); *Todd v. United States*, 386 F.3d 1091, 1093-94 (Fed. Cir. 2004). For a claim to fall within this Court's "jurisdiction under the Tucker Act, a plaintiff must identify a money-mandating" source under federal law. *Bell v. United States*, 20 F.4th 768, 770 (Fed. Cir. 2021). Specifically, a plaintiff "must demonstrate that the source of substantive law he relies upon 'can fairly be interpreted as mandating compensation by the Federal Government.'" *Mitchell*, 463 U.S. at 216-17 (quoting *Testan*, 424 U.S. at 400 (citation omitted)).

As with all other litigants, this Court must have jurisdiction over claims brought by *pro se* plaintiffs. *See Landreth*, 797 F. App'x 521, 523 (Fed. Cir. 2020) (per curiam); *Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987); *Brewington v. United States*, No. 19-CV-611 C, 2020 WL 1818679, at *1 (Fed. Cl. Apr. 1, 2020), *aff'd*, No. 2020-1788, 2020 WL 6494841 (Fed. Cir. July 23, 2020). While this Court must liberally construe the filings of *pro se* plaintiffs, such plaintiffs still have the burden of establishing the Court's jurisdiction by a preponderance of the evidence. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Landreth*, 797 F. App'x at 523; *Curry v. United States*, 787 F. App'x 720, 722 (Fed. Cir. 2019) (per curiam).

II.   <u>Transfer</u>

If a court determines it lacks subject matter jurisdiction over a civil action, "the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed."  28 U.S.C. § 1631.  Transfer is therefore appropriate when three conditions are met: (1) the transferor court lacks subject matter jurisdiction; (2) the case could have been filed in the transferee court; and (3) transfer is in the interest of justice.  *See Brown v. United States*, 74 Fed. Cl. 546, 550 (2006); *Metzinger v. Dep't of Veterans Affs.*, 20 F.4th 778, 780-81 (Fed. Cir. 2021) ("A proper 28 U.S.C. § 1631 transfer requires both that the transferor court lack jurisdiction and that the transferee court have it."); *Fisherman's Harvest, Inc. v. PBS & J*, 490 F.3d 1371, 1374 (Fed. Cir. 2007) ("The statute [28 U.S.C. § 1631] requires the transferor court to determine both that it lacks jurisdiction and that the transferee court possesses jurisdiction.").

"The phrase 'if it is in the interest of justice' relates to claims which are nonfrivolous and as such should be decided on the merits."  *Galloway Farms, Inc. v. United States*, 834 F.2d 998, 1000 (Fed. Cir. 1987) (citing *Zinger Constr. Co. v. United States*, 753 F.2d 1053, 1055 (Fed. Cir. 1985)).  The decision to transfer "rests within the sound discretion of the transferor court."  *Spencer v. United States*, 98 Fed. Cl. 349, 359 (2011); *see also Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1342 (Fed. Cir. 2008) ("A decision by the Court of Federal Claims concerning whether to dismiss a claim or transfer it to another court is . . . reviewed for abuse of discretion.").

The transfer analysis applies on a claim-by-claim basis.  If only some claims in a complaint satisfy the transfer conditions under 28 U.S.C. § 1631, a court may transfer only those claims and decline to transfer the other claims.  *See United States v. County of Cook*, 170 F.3d 1084, 1089

(Fed. Cir. 1999) (holding that "§ 1631 allows for the transfer of less than all of the claims in a civil action"); *Reilly v. United States*, 93 Fed. Cl. 643, 651 (2010) ("[W]hen a court has jurisdiction over some, but not all, claims, it may transfer those for which jurisdiction is lacking to another court, assuming the other prerequisites of section 1631 are met.").

DISCUSSION

The Court lacks subject matter jurisdiction over Plaintiff's causes of action. For the reasons stated below, this Court must dismiss Plaintiff's detrimental reliance, 28 U.S.C. § 1495 unjust conviction, and criminal law claims. However, as further discussed in greater detail below, the Court concludes transfer of Plaintiff's tort and constitutional claims under 28 U.S.C. § 1631 is in the interest of justice.

I.   This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claims

Plaintiff's Motion to Change Venue (ECF No. 10) implicitly concedes this Court lacks subject matter jurisdiction over his claims. *See* Mot. Transfer at 2-4. Plaintiff also agreed during the September 12, 2022 status conference that this Court lacks subject matter jurisdiction over his claims. Tr. at 7:23-8:6. Nonetheless, this Court has a duty to independently evaluate whether it has jurisdiction over actions brought before it. *Arctic Corner, Inc. v. United States*, 845 F.2d 999, 1000 (Fed. Cir. 1988) ("A court may and should raise the question of its jurisdiction . . . at any time it appears in doubt."). This is particularly appropriate in *pro se* cases, for "pro se complaint[s] are to be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Hurt v. United States*, 64 Fed. Cl. 88, 89 (2005) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).

After review of Plaintiff's claims and applicable law, this Court concludes it lacks subject matter over Plaintiff's claims. First, this Court lacks jurisdiction over criminal matters. Second, this Court does not have subject matter jurisdiction over claims sounding in tort. Third, Plaintiff's

detrimental reliance cause of action relies on a contract implied-in-law with the United States, over which this Court lacks jurisdiction. Fourth, the constitutional violations pleaded in the Complaint are not money-mandating claims over which this Court would have jurisdiction. Finally, Plaintiff's failure to satisfy the requirements of 28 U.S.C. § 2513 renders this Court without jurisdiction over his unjust conviction claim.

A.  <u>This Court Lacks Subject Matter Jurisdiction Over Criminal Matters</u>

Though not expressly stated, law enforcement and prosecutorial misconduct is at the heart of Plaintiff's Complaint.[4]  However, "[t]he Court of Federal Claims does not have the power to . . . review in detail the facts surrounding a conviction or imprisonment."  *Zakiya v. United States*, 79 Fed. Cl. 231, 234-35 (2007); *see also Jones v. United States*, 440 F. App'x 916, 918 (Fed. Cir. 2011) (Court of Federal Claims "has no jurisdiction over criminal matters generally."); *Joshua v. United States*, 17 F.3d 378, 380 (Fed. Cir. 1994) (Court of Federal Claims "has no jurisdiction to adjudicate any claims whatsoever under the federal criminal code.").  Further, this Court lacks jurisdiction to scrutinize the actions of federal or state law enforcement; "[t]he proper forum for resolving such issues is the district court in which they arose, or the appellate court that reviews the district court's decisions."  *Seals-Bey v. United States*, 116 Fed. Cl. 120, 122 (2014) (no jurisdiction over claims of prosecutorial misconduct and fabrication of evidence); *see also*

---

[4] *See, e.g.*, Compl. at 11-12 (alleging misconduct by prosecutor and Plaintiff's defense counsel), 18 ("I, the Plaintiff, decided to investigate the US Government for unlawful conviction(s) and unlawful imprisonment . . . .") (emphasis omitted), 19 (affidavit contained "lies and known material representations" and "exculpatory material/evidence") (emphasis omitted), 19-20 (search warrant "predicated on false testimony and material misrepresentations"), 22 (alleging "prejudicial behavior" committed by law enforcement), 23-27 (alleging racial profiling and racism on behalf of law enforcement), 32 (alleging Defendant is liable for "abuse of process" and "malicious prosecution"), 32-34 (citing violations of 18 U.S.C. § 242 and 42 U.S.C. § 1983 by law enforcement officers), 42-43 (alleging "illegal prosecution"), 46-47 (Defendant "denied [Plaintiff] due process of law").

*Allustiarte v. United States*, 256 F.3d 1349, 1352 (Fed. Cir. 2001) ("[T]he Court of Federal Claims does not have jurisdiction to review the decisions of district courts.") (quoting *Joshua*, 17 F.3d at 380) (internal quotations omitted). Thus, to the extent Plaintiff seeks monetary damages for alleged misconduct by federal law enforcement officers and prosecutors, he must bring those claims before the district court as it is well-established that this Court lacks jurisdiction to entertain such claims. *Joshua*, 17 F.3d at 380; *Allustiarte*, 256 F.3d at 1352. As Plaintiff's criminal law claims cannot be transferred to the Western District of Kentucky, as described in Section II.B below, those claims must be dismissed for lack of subject matter jurisdiction. *See* Rules 12(b)(1), 12(h)(3).

### B. This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Tort Claims

This Court likewise lacks subject matter jurisdiction over Plaintiff's tort claims. Congress has expressly excluded actions "sounding in tort" from this Court's subject matter jurisdiction. *See* 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States . . . in cases not sounding in tort."); *Brown v. United States*, 105 F.3d 621, 623 (Fed. Cir. 1997) ("The Court of Federal Claims . . . lacks jurisdiction over tort actions against the United States."); *New Am. Shipbuilders, Inc. v. United States*, 871 F.2d 1077, 1079 (Fed. Cir. 1989) ("If the government misconduct alleged was tortious, jurisdiction is not granted the Claims Court under the Tucker Act.").

Plaintiff's Complaint includes several claims sounding in tort. As discussed above, Plaintiff alleges law enforcement and prosecutorial misconduct, civil conspiracy/collusion, and misrepresentation/concealment during the investigation into and conviction for his bribery offense. *See, e.g.*, Compl. at 35-42 ("Civil Conspiracy/Collusion"), 45-46 ("Misrepresentation/Concealment"); *see also supra* note 4. Law enforcement and prosecutorial

14

misconduct, civil conspiracy, and misrepresentation/concealment are all tort claims over which this Court lacks subject matter jurisdiction. *See, e.g.*, *Cochran v. United States*, 250 F.3d 754 (Fed. Cir. 2000) (no jurisdiction over "malicious prosecution" tort claim); *Hernandez v. United States*, 96 Fed. Cl. 195, 203-04 (2010) (no jurisdiction over "allegations of malicious prosecution, prosecutorial misconduct, and other acts of tortious conduct by . . . state and federal officials"); *Black v. United States*, 84 Fed. Cl. 439, 453 (2008) (no jurisdiction over "tortious conduct, *viz.*, wrongful concealment, misrepresentation, or prosecutorial misconduct"); *Jacobs v. United States*, No. 09-146, 2010 WL 2594320, at *6 ("Claims of civil conspiracy are claims sounding in tort . . . ."). This Court therefore lacks subject matter jurisdiction over Plaintiff's tort claims alleging law enforcement or prosecutorial misconduct, civil conspiracy, and misrepresentation/concealment.

Plaintiff's Complaint, liberally interpreted, also includes causes of action based on fraud and intentional infliction of emotional distress. *See e.g.*, Compl. at 42-43 ("Fraud by Commission"), 43-44 ("Fraud by Omission"), 44-45 ("Intentional Fraud") ("The appropriate defendant(s)' conduct was to inflict emotional distress."), 45-46 ("The appropriate defendants' participation, in the schemed plan to cause Mr. Jackson severe and prolonged emotional distress, constitutes a knowing misrepresentation of the truth and concealment of material facts to induce plaintiff to act to his detriment."). Fraud and intentional infliction of emotional distress are similarly tort claims over which this Court lacks subject matter jurisdiction. *See, e.g.*, *Phu Mang Phang v. United States*, 388 F. App'x 961, 963 (Fed. Cir. 2010) (no jurisdiction over fraud claims); *Salman v. United States*, 69 Fed. Cl. 36, 38 (2005) ("[Plaintiff's] claim is improperly before this court because an action for fraud lies in tort."); *Whitehead v. United States*, 155 F.3d 574 (Fed. Cir. 1998) ("The Court of Federal [C]laims properly held that [Plaintiff's] claims for . . . intentional infliction of emotion[al] distress sounded in tort and were outside the jurisdiction of the court.");

*Kaetz v. United States*, 158 Fed. Cl. 422, 430 (2022) ("[C]laims for . . . infliction of emotional distress sound in tort . . . and the court lacks jurisdiction over tort claims.").  This Court therefore lacks subject matter jurisdiction over Plaintiff's tort claims based on fraud and intentional infliction of emotional distress.

In sum, this Court lacks subject matter jurisdiction over Plaintiff's tort claims of prosecutorial and law enforcement misconduct, civil conspiracy, concealment, misrepresentation, fraud, and intentional infliction of emotional distress.  *See* Compl. at 35-46.

C.  This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Detrimental Reliance Claim

Plaintiff's Complaint also pleads a claim of detrimental reliance.  Compl. at 46-47. Plaintiff alleges that "[i]n seeking legal assistance through the office(s) of the government because plaintiff lacked finances to pay for his own legal defense, plaintiff relied upon the representations of these defendant(s) that lawyers appointed by the government were competent and accomplished lawyers with considerable experience and knowledge."  Compl. at 46.  Plaintiff further claims he "relied upon the representations of the government . . . that the legal system provides 'justice for all'" and "relied to his detriment and as a result suffered damages."  *Id.* (emphasis omitted).

Plaintiff's detrimental reliance cause of action is far from clear.  Nonetheless, the Court understands Plaintiff's cause of action to rest on Defendant's alleged promise — and alleged failure — to adequately represent Plaintiff during the criminal investigation and prosecution of Plaintiff's bribery and conspiracy charges.[5]  According to the Complaint, Defendant promised the "lawyers appointed [to represent Plaintiff] by the government were competent and accomplished

---

[5] The Complaint does not assert that the alleged contract on which Plaintiff detrimentally relied was the plea agreement.  Instead, the Complaint states Plaintiff relied on Defendant's representations allegedly provided while Plaintiff was "seeking legal assistance" from a public defender in the first instance.  Compl. at 46.

lawyers with considerable experience and knowledge" who would ably represent Plaintiff.  Compl. at 46.  Plaintiff contends he then relied on that alleged promise, to his alleged detriment.  *Id.*

Plaintiff's detrimental reliance cause of action is essentially a claim based on promissory estoppel.  *See Copar Pumice Co., Inc. v. United States*, 112 Fed. Cl. 515, 538 (2013) ("A claim based on detrimental reliance is a claim based on promissory estoppel.").  The doctrine of promissory estoppel holds that "a duty is imposed by operation of law without regard to the intent of the parties."  *Pacific Gas & Elec. Co. v. United States*, 3 Cl. Ct. 329, 340 (1983).  However, "[t]his court has no jurisdiction over claims for promissory estoppel, as it requires the finding of a contract implied-in-law against the Government, for which there has been no waiver of sovereign immunity."  *Sinclair v. United States*, 56 Fed. Cl. 270, 281 (2003); *see also Pacific Gas*, 3 Cl. Ct. at 340 ("The Claims Court has no jurisdiction to render judgment against the United States based upon a contract implied-in-law.").  In other words, a plaintiff may not sue in the U.S. Court of Federal Claims to enforce an obligation assumed by the United States under an implied-in-law contract because the United States has not consented to waive sovereign immunity and subject itself to liability under such contracts.  *See Hercules, Inc. v. United States*, 516 U.S. 417, 423 (1996) ("We have repeatedly held that [Court of Federal Claims] jurisdiction extends only to contracts either express or *implied in fact*, and not to claims on contracts *implied in law*.") (emphasis added); *see also United States v. Mitchell*, 463 U.S. 206, 218 (1983) ("[W]e have held that the [Tucker] Act does not reach claims based on contracts implied in law, as opposed to those implied in fact.").

Accordingly, a detrimental reliance (*i.e.*, promissory estoppel) cause of action depends on the existence of a contract implied in law.  *Sinclair*, 56 Fed. Cl. at 281.  As further described in Section II.B below, Plaintiff's detrimental reliance claim cannot be transferred to the Western

District of Kentucky.   Accordingly, because the U.S. "Court of Federal Claims . . . lacks jurisdiction over contracts implied in law," Plaintiff's detrimental reliance claim must be dismissed pursuant to Rules 12(b)(1) and 12(h)(3).  *Int'l Data Prods. Corp. v. United States*, 492 F.3d 1317, 1325 (Fed. Cir. 2007).

> D.   This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Constitutional Claims

Plaintiff's Complaint also contends Defendant violated his rights under the Fifth and Sixth Amendments to the U.S. Constitution.  *See* Compl. at 47-50.  With respect to the Fifth Amendment, the Complaint pleads that Defendant violated Plaintiff's rights under the Due Process Clause, alleging generally that "[t]he illegal and unethical conduct of the defendant(s) constitutes denial of plaintiff's due process rights under the 5th and 14th Amendments to the United States Constitution."  Compl. at 48.  With respect to the Sixth Amendment, the Complaint pleads that "[t]he conduct of the appropriate defendant(s) intentionally using a legal process . . . for the improper purpose of hiding evidence from [Plaintiff] which would have been used by him to call into question false accusations and false statements . . . constitute abuse of process . . . thereby violating [Plaintiff's] Sixth Amendment Right(s): to know who my accuser(s) is/are and the nature of the charges and evidence against me."  Compl. at 48-49 (emphasis in original omitted); *see also* Compl. at 50 (Defendant deprived Plaintiff of "right(s) to confront his accusers and the evidence against him" and deprived Plaintiff of "access to all relevant exculpatory and impeachable material/evidence.").   Although not clear, Plaintiff's Complaint also seems to imply a Sixth Amendment ineffective assistance of counsel claim.  *See* Compl. at 30.

This Court lacks subject matter jurisdiction over Plaintiff's constitutional claims, for the simple fact that neither the Fifth Amendment's Due Process clause nor the Sixth Amendment are

money-mandating provisions of federal law.[6]  *See, e.g.*, *Smith v. United States*, 709 F.3d 1114, 1116 (Fed. Cir. 2013) ("The law is well settled that the Due Process clauses of both the Fifth and Fourteenth Amendments do not mandate the payment of money and thus do not provide a cause of action under the Tucker Act."); *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (Due Process clauses of Fifth and Fourteenth Amendment "do not mandate payment of money by the government"); *Omran v. United States*, 629 F. App'x 1005, 1008 (Fed. Cir. 2015) ("The Sixth Amendment does not itself create a right to recover money damages . . . ."); *Alston-Bullock v. United States*, 122 Fed. Cl. 38, 44 (2015) ("The Sixth Amendment is not money-mandating and, therefore, jurisdiction to review these claims does not lie in this court.").  This Court therefore lacks subject matter jurisdiction over Plaintiff's non-money-mandating constitutional allegations.

Plaintiff argues his constitutional claims are money-mandating.  As discussed above, a plaintiff seeking this Court's jurisdiction "must demonstrate that the source of substantive law that he relies upon can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained."  *Mitchell*, 463 U.S. at 217 (quoting *Testan*, 424 U.S. at 400) (citation omitted).  Conceding the constitutional provisions are not money-mandating on their own, Plaintiff argues the "substantive law" undergirding his Fifth and Sixth Amendment causes of action is the *Bivens* action, so named after the Supreme Court's decision in *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  Opp. at 38-39.  "In *Bivens*, the

---

[6] Plaintiff's Opposition to Defendant's Motion to Dismiss (ECF No. 8) (Opp.) references Defendant's violation of Plaintiff's Fourth Amendment rights.  Opp. at 38.  The Complaint does not plead a cause of action under the Fourth Amendment; but even if it had, the Fourth Amendment is not money-mandating.  *See Brown v. United States*, 105 F.3d 621, 623 (Fed. Cir. 1997) ("Because monetary damages are not available for a Fourth Amendment violation, the Court of Federal Claims does not have jurisdiction over such a violation.").  Therefore, even if properly pled, this Court would lack jurisdiction over any cause of action stemming from alleged violations of Plaintiff's Fourth Amendment rights.

Supreme Court held that a party may, under certain circumstances, bring an action for violations of constitutional rights against Government officials in their individual capacities." *Brown*, 105 F.3d at 624. However, a plaintiff may not rely on *Bivens* in this Court because the "Tucker Act grants the Court of Federal Claims jurisdiction over suits against the United States, ***not*** against individual federal officials." *Id.* (emphasis added); *see also Shelden v. United States*, 742 F. App'x 496, 500 (Fed. Cir. 2018) ("'Bivens actions' lie outside the jurisdiction of the Claims Court."). *Bivens* does not support Plaintiff's argument that this Court has jurisdiction over his constitutional causes of action.

Accordingly, this Court lacks subject matter jurisdiction over Plaintiff's claims asserted under the Fifth and Sixth Amendments. *See* Compl. at 47-50.

### E.  This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Unjust Conviction Claim

Finally, Plaintiff argues he was unjustly convicted and is entitled to damages pursuant to 28 U.S.C. §§ 1495 and 2513. Opp. at 39-45. The Court must first decide whether the Complaint includes a cause of action under 28 U.S.C. §§ 1495 and 2513. If it does, the Court must then resolve an initial threshold question: whether a complaint that fails to satisfy 28 U.S.C. § 2513 deprives this Court of subject matter jurisdiction under Rules 12(b)(1) and 12(h)(3) or, alternatively, simply fails to state a claim under Rule 12(b)(6). Finally, the Court must assess whether Plaintiff's claim satisfies 28 U.S.C. § 2513.

#### i.    Plaintiff's Complaint Adequately Pleads Unjust Conviction

Defendant first argues in its Motion that "[t]his Court lacks authority" to entertain Plaintiff's unjust conviction claims because Plaintiff "does not support his allegations with citation to Federal law, thus failing to meet even the lesser burden required of a *pro se* plaintiff." Mot. at 8-9. This Court disagrees. As Defendant concedes, "the allegations of the pro se complaint" are

held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); Mot. at 8-9. As described further below, Plaintiff has sufficiently plead an unjust conviction cause of action under 28 U.S.C. §§ 1495 and 2513.

Plaintiff's Complaint expressly asserts claims based on "unjust conviction." Compl. at 33 ("Plaintiff is within the two-year statute of limitations for his claims involving *unjust conviction* and illegal imprisonment . . . .") (emphasis added). Though the Complaint's reference to unjust conviction is not clearly identified as a cause of action, "[p]ro se petitioners are not expected to frame issues with the precision of a common law pleading." *Roche v. U.S. Postal Service*, 828 F.2d 1555, 1558 (Fed. Cir. 1987). Moreover, the thrust of Plaintiff's Complaint is that Defendant conspired to unlawfully convict him of bribery and conspiracy; this allegation "fairly leaps off the pages" of his Complaint. *Id.* The Complaint notes its goal is to address Plaintiff's "unjust and unlawful prison sentence," Compl. at 16, Plaintiff's "unlawful conviction(s) and unlawful imprisonment," Compl. at 18, the "malicious and unjust prosecution" of Plaintiff, Compl. at 32, and the "unjust imprisonment" of Plaintiff, Compl. at 49. *See also* Compl. at 48 ("The defendant(s) breached the duty owed plaintiff and caused [Plaintiff's] illegal prosecution and unlawful imprisonment."). Defendant concedes as much, noting "prosecutorial misconduct, challenges to the lawfulness of his criminal conviction, and wrongful concealment of evidence comprise the gravamen of Mr. Jackson's complaint." Mot. at 6.

Finally, the Complaint references Plaintiff's successful petition for a writ of *coram nobis*. *See, e.g.*, Compl. at 16-18. The district court's vacatur of Plaintiff's bribery and conspiracy convictions also offers a facially coherent argument that Plaintiff asserts that he has met the requirements of 28 U.S.C. § 2513 — a requirement for an unjust conviction cause of action. *Compare with Castro v. United States*, 364 F. App'x 619, 620 (Fed. Cir. 2010) (affirming dismissal

21

of section 1495 complaint because "given that [plaintiff] is currently incarcerated in a federal prison, it seems likely that his conviction has not been reversed or set aside").  The facts alleged in the Complaint track those required to allege a *prima facie* case of unjust conviction under 28 U.S.C. §§ 1495 and 2513.

The Court is thus satisfied that, under the less stringent pleading standard for *pro se* complaints, the Complaint adequately pleads an unjust conviction and imprisonment cause of action under 28 U.S.C. §§ 1495 and 2513.  *See Irizarry v. United States*, No. 20-1139, 2020 WL 5498491, at *3 (Fed. Cl. Sept. 10, 2020) ("A liberal reading of the complaint could support a claim for an unjust conviction and imprisonment pursuant to 28 U.S.C. § 2513."); *Montes v. United States*, 2019 WL 1975945, at *2 (Fed. Cl. Apr. 29, 2019) ("It is thus reasonable to assume . . . that [plaintiff] is primarily alleging a claim of unjust conviction, pursuant to 28 U.S.C. § 1495 . . . ."). This does not, of course, mean the Complaint states the claim with the necessary particularity to withstand a motion to dismiss, nor does it mean that this Court even has subject matter jurisdiction over Plaintiff's cause of action.  This Court simply concludes Plaintiff's Complaint includes enough specificity to plead a cause of action under 28 U.S.C. §§ 1495 and 2513.

   ii.   <u>This Court is Bound by Precedent Establishing that Failure to Satisfy 28 U.S.C. § 2513 Deprives This Court of Subject Matter Jurisdiction</u>

Having determined the Complaint alleges an unjust conviction cause of action under 28 U.S.C. §§ 1495 and 2513, the Court turns to the merits of Defendant's motion to dismiss. Defendant moved to dismiss the Complaint under Rule 12(b)(1), lack of subject-matter jurisdiction.  Mot. at 1.  Addressing Plaintiff's unjust conviction claim, Defendant asserts "this Court possesses limited jurisdiction to entertain claims for compensation based upon unjust conviction."  Mot. at 9.  Defendant argues a "'certificate of innocence' verifying that plaintiff meets the requirements of Section 2513 is a jurisdictional prerequisite under §§ 1495 and 2513."

*Id.*  In other words, Defendant argues that because Plaintiff has not provided a certificate of innocence compliant with 28 U.S.C. § 2513, this Court lacks subject matter jurisdiction over Plaintiff's claim.  Defendant's contention implicates a procedural question that has resulted in divergent views within the U.S. Court of Federal Claims.  Before the Court can decide the merits of Defendant's argument, it must first address subject matter jurisdiction and the civil procedure oddity at play in claims asserted under 28 U.S.C. §§ 1495 and 2513.

Section 1495 states: "The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim for damages by any person unjustly convicted of an offense against the United States and imprisoned."  28 U.S.C. § 1495.  Section 2513 then specifies what a plaintiff must demonstrate to prevail under section 1495.  "Any person suing under section 1495 of this title must allege and prove that:

> (a)(1) His conviction has been reversed or set aside on the ground that he is not guilty of the offense of which he was convicted, or on new trial or rehearing he was found not guilty of such offense, as appears from the record or certificate of the court setting aside or reversing such conviction, or that he has been pardoned upon the stated ground of innocence and unjust conviction and
>
> (a)(2) He did not commit any of the acts charged or his acts, deeds, or omissions in connection with such charge constituted no offense against the United States, or any State, Territory or the District of Columbia, and he did not by misconduct or neglect cause or bring about his own prosecution.

28 U.S.C. § 2513(a).  Section 2513 further requires "[p]roof of the requisite facts shall be by a certificate of the court or pardon wherein such facts are alleged to appear, and other evidence thereof shall not be received."  28 U.S.C. § 2513(b).  The "certificate of the court" recited in subsection (b) is often called a "certificate of innocence."  *See, e.g.*, *Humphrey v. United States*, 52 Fed. Cl. 593, 596 (2002).

On their face, sections 1495 and 2513 are straightforward.  Under section 1495, the U.S. Court of Federal Claims has subject matter jurisdiction over unjust conviction claims against the

United States; and section 2513 lays out what an unjust conviction claimant needs to prove. However, there are diverging theories regarding the interplay between sections 1495 and 2513; specifically, whether a plaintiff's failure to comply with section 2513 means the court lacks subject matter jurisdiction over the cause of action under Rules 12(b)(1) and 12(h)(3), or whether it means the plaintiff has failed to state a claim under Rule 12(b)(6).

Some decisions from this court have concluded that failure to furnish a certificate of innocence deprives the court of subject matter jurisdiction. *See Wood v. United States*, 91 Fed. Cl. 569, 577 (2009) ("Accordingly, this court holds that compliance with § 2513, including submission of a certificate of innocence . . . is a prerequisite to the jurisdiction of the Court of Federal Claims."); *Faircloth v. United States*, No. 21-958, 2022 WL 908953, at *4 (Fed. Cl. Mar. 29, 2022) (compiling cases) ("[T]he Court finds that a certificate of innocence is a jurisdictional prerequisite under §§ 1495 and 2513."); *Brown v. United States*, No. 22-418, 2022 WL 2817532, at *4 (Fed. Cl. July 19, 2022); *Brewer v. United States*, No. 20-1209, 2021 WL 655432, at *3 (Fed. Cl. Feb. 19, 2021) ("[B]inding precedent from the Court of Claims . . . establish that Congress conditioned the exercise of jurisdiction under section 1495 upon a plaintiff further meeting the requirements of section 2513.").  These cases follow a 1958 United States Court of Claims (Court of Claims) decision that held "[w]hen [sections 1495 and 2513] are read together it becomes manifest that the sections confer jurisdiction on this court only in cases where there has been conviction *and* in which the other conditions set out in section 2513 are complied with."  *Grayson v. United States*, 141 Ct. Cl. 866 (1958)[7] (emphasis added).

---

[7] *Grayson* was but one (arguably the first) Court of Claims decision to hold section 2513 was a jurisdictional prerequisite.  *See also Calloway v. United States*, 215 Ct. Cl. 1065, 1067 (1978); *Lucas v. United States*, 228 Ct. Cl. 862, 863 (1981) ("Plaintiff here has not met the requirements of [section 2513] and we have no jurisdiction."); *McMurry v. United States*, 228 Ct. Cl. 897, 898 (1981); *Moore v. United States*, 230 Ct. Cl. 819, 820 (1982) ("[A] [section 1495] claim . . . is

*Grayson* and its progeny are binding precedent in this Court.  Decisions from the Court of Claims are binding precedent in the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) — and therefore in the U.S. Court of Federal Claims.  *South Corp. v. United States*, 690 F.2d 1368, 1369 (Fed. Cir. 1982) (en banc) ("We hold that the holdings of our predecessor courts, the United States Court of Claims . . . shall be binding as precedent in this Court.").  *Grayson*'s conclusion that failure to comply with section 2513 deprives this Court of subject matter jurisdiction is therefore binding precedent this Court is obliged to follow.  *Faircloth*, 2022 WL 908953, at *4 ("Because *Grayson* remains binding precedent addressing the precise issue at hand, the Court finds that a certificate of innocence is a jurisdictional prerequisite under §§ 1495 and 2513.").

Other decisions from this court, however, have veered away from *Grayson*.  *See Winters v. United States*, 140 Fed. Cl. 585, 589 (2018); *Bobka v. United States*, 133 Fed. Cl. 405, 410 (2017); *Sykes v. United States*, 105 Fed. Cl. 231, 234 (2012).  This line of cases takes direction from the Federal Circuit's 2005 decision in *Fisher v. United States*, 402 F.3d 1167 (Fed. Cir. 2005) (en banc in relevant part).  In *Fisher*, the Federal Circuit concluded that "[w]hen a complaint is filed alleging a Tucker Act claim based on a Constitutional provision, statute, or regulation . . . the trial court at the outset shall determine . . . whether the Constitutional provision, statute, or regulation is one that is money-mandating."  *Fisher*, 402 F.3d at 1173.  If it is, the court has jurisdiction.  *Id.*  "[T]he determination that the source [of substantive law underlying a Tucker Act claim] is money-mandating shall be determinative . . . as to the question of the court's jurisdiction."  *Id.*  According to the *Fisher* line of cases, because the jurisdictional hook for an unjust conviction cause of action — 28 U.S.C. § 1495 — is money-mandating, the court has subject matter

---

severely restricted by the requirements of 28 U.S.C. § 2513 (1976) which is jurisdictional and therefore must be strictly construed.").

jurisdiction.  *See Winters*, 140 Fed. Cl. at 589.  Under such reasoning, defects relating to section 2513 relate to the plaintiff's failure to state a claim rather than to jurisdictional sufficiency.  *Id.*  According to *Winters*, *Bobka*, *Sykes*, and other decisions holding that section 2513 is not a jurisdictional prerequisite, *Fisher* effectively abrogated *Grayson*.  *See Sykes*, 105 Fed. Cl. at 234.

The Federal Circuit, for its part, has not adhered to one view or the other.  *See, e.g.*, *Faircloth*, 2022 WL 908953, at *4.  In *Nyabwa v. United States*, a nonprecedential opinion, the Federal Circuit stated "the dismissal of Nyabwa's [section 1495] complaint is better framed as one predicated on his failure to state a claim," seemingly endorsing the *Fisher* line of Court of Federal Claims cases.  *Nyabwa v. United States*, 696 F. App'x 493, 494-95 (Fed. Cir. 2017).  But in *Kenyon v. United States*, another nonprecedential decision issued the same year, the Federal Circuit agreed that "the [U.S. Court of Federal Claims] properly concluded it lacked jurisdiction over Kenyon's [section 1495] wrongful imprisonment claims," seemingly endorsing the *Grayson* line of cases.  *Kenyon v. United States*, 683 F. App'x 945, 948-49 (Fed. Cir. 2017).  The Federal Circuit has thus affirmed decisions from this court embracing *both* theories under 28 U.S.C. §§ 1495 and 2513.[8]  This Court is not aware of any recent precedential Federal Circuit decisions addressing the specific question of whether compliance with 28 U.S.C. § 2513 is a prerequisite to this Court's exercise of jurisdiction over a 28 U.S.C. § 1495 claim.

---

[8] Most decisions from the Federal Circuit, however, agree with *Grayson* that failure to comply with section 2513 is a jurisdictional defect.  *See, e.g.*, *Francis v. United States*, No. 2022-1188, 2022 WL 1655689, at *1 (Fed. Cir. 2022) (affirming dismissal of section 1495 complaint for lack of subject matter jurisdiction due to 2513 defect); *Carpenter v. United States*, 603 F. App'x 935, 937 (Fed. Cir. 2015) (same); *Castro v. United States*, 364 F. App'x 619, 620 (Fed. Cir. 2010) (same); *Chevalier v. United States*, 329 F. App'x 924, 926 (Fed. Cir. 2009) (same); *Humphrey v. United States*, 60 F. App'x 292, 295 (Fed. Cir. 2003) ("The Order is therefore inadequate as a certificate of innocence under § 2513.  Based on these facts, the Court of Federal Claims correctly concluded that Mr. Humphrey did not meet the jurisdictional requirements of § 2513."); *Caudle v. United States*, 1994 WL 502934 (Fed. Cir. Sept. 15, 1994) ("The courts have repeatedly held that the requirements of 28 U.S.C. section 2513 are jurisdictional[.]").

26

Faced with these dueling procedural theories, this Court is bound to align with the *Grayson* line of decisions and holds that "compliance with § 2513, including submission of a certificate of innocence . . . is a prerequisite to the jurisdiction of the Court of Federal Claims." *Wood*, 91 Fed. Cl. at 577; *see also Faircloth*, 2022 WL 908953, at *4 ("[T]he Court finds that a certificate of innocence is a jurisdictional prerequisite under §§ 1495 and 2513."); *Grayson*, 141 Ct. Cl. at 866. Several considerations inform the Court's decision. *First*, and most importantly, *Grayson* represents binding precedent on this Court. As noted, decisions from the Court of Claims are binding precedent on the Federal Circuit and are therefore binding precedent on this Court. *South Corp.*, 690 F.2d at 1369; *see also Arroyo v. United States*, 116 Fed. Cl. 691, 699 n.12 (2014) ("Court of Claims decisions are binding on this Court unless overruled by the Federal Circuit."). To the extent nonprecedential decisions from the Federal Circuit, such as *Nyabwa*, conflict with *Grayson*, this Court is obligated to follow binding precedent. Nonprecedential decisions from the Federal Circuit are not binding precedent that would overrule a Court of Claims decision. *See* United States Court of Appeals for the Federal Circuit Rules of Practice, Rule 32.1(d) ("The court . . . will not give one of its own nonprecedential dispositions the effect of binding precedent."). *Grayson*'s holding that sections 1495 and 2513 "confer jurisdiction on this court only in cases where . . . the other conditions set out in section 2513 are complied with" remains undisturbed. *Grayson*, 141 Ct. Cl. at 866.

*Second*, this Court is not convinced that the Federal Circuit's *Fisher* decision has any bearing on the present analysis of 28 U.S.C. §§ 1495 and 2513. As discussed above, *Fisher* held that "[w]hen a complaint is filed *alleging a Tucker Act claim* based on a Constitutional provision, statute, or regulation, *see* 28 U.S.C. § 1491(a)(1), the trial court at the outset shall determine . . . whether the Constitutional provision, statute, or regulation is one that is money-mandating."

*Fisher*, 402 F.3d at 1173 (emphasis added).  If the provision is money-mandating, "the court shall declare that it has jurisdiction over the cause."  *Id.*  Thus, "the determination that the source is money-mandating shall be determinative."  *Id.*  However, crucially, *Fisher*'s money-mandating test is limited to cases "alleging a Tucker Act claim."  *Id.*; *see also Adair v. United States*, 497 F.3d 1244, 1251 (Fed. Cir. 2007) ("*Fisher* . . . held that a single determination controls whether the plaintiff has identified a money-mandating source *for purposes of Tucker Act jurisdiction . . .*") (emphasis added).  Indeed, *Fisher* expressly stated "it is the Big Tucker Act with which we are here concerned."  *Fisher*, 402 F.3d at 1172.

In contrast, a cause of action under 28 U.S.C. § 1495 does not assert subject matter jurisdiction under the Tucker Act, 28 U.S.C. § 1491.  *See Brown*, 2022 WL 2817532, at *3 ("*Fisher* concerned the subject matter jurisdiction of the Court of Federal Claims pursuant to 28 U.S.C. § 1491, not Section 1495.").  Section 1495 provides an independent basis, separate from 28 U.S.C. § 1491, for this Court to exercise jurisdiction "upon any claim for damages by any person unjustly convicted of an offense against the United States."  28 U.S.C. § 1495.  *Fisher*'s "money-mandating determinative" test thus does not apply to section 1495 claims.  *See Brown*, 2022 WL 2817532, at *4 ("Accordingly, this Court determines that *Fisher*'s applicability to Section 1495 is too uncertain for it to displace *Grayson*'s clear holding.").  Accordingly, that section 1495 is money-mandating does not automatically grant this Court jurisdiction.  This Court must still, as precedent dictates, assess jurisdiction under section 1495 part and parcel with compliance under section 2513.  As *Grayson* instructs, this Court has subject matter jurisdiction over a 28 U.S.C. § 1495 cause of

action only if the plaintiff complies with 28 U.S.C. § 2513, including its requirement of a certificate of innocence.[9]

  iii. <u>Plaintiff Does Not Satisfy 28 U.S.C. § 2513</u>

  Accordingly, whether this Court has subject matter jurisdiction over Plaintiff's unjust conviction claim depends upon whether Plaintiff has satisfied 28 U.S.C. § 2513's requirements. Plaintiff has not.

  Section 2513 requires a plaintiff prove (1) his conviction was reversed or set aside on the ground that he is not guilty of the offense for which he was convicted, (2) he did not commit any of the acts charged or his acts, deeds, or omissions constituted no offense against the United States, and (3) he did not by misconduct or neglect cause or bring about his own prosecution.  28 U.S.C. § 2513(a); *Faircloth*, 2022 WL 908953, at *4.  Proof must "be by a certificate of the court . . . wherein such facts are alleged to appear."  28 U.S.C. § 2513(b).  As discussed above, this certificate is often called a "certificate of innocence".  *See, e.g.*, *Humphrey*, 52 Fed. Cl. at 596.

---

[9] This Court pauses to emphasize its holding is compelled by precedent.  In this Court's view, *Grayson* and its progeny represent binding precedent that have not been overruled by the Federal Circuit.  In the common law tradition, this Court must apply existing precedent to the questions before it.  However, if this were an issue of first impression, this Court would likely conclude it has subject matter jurisdiction over 28 U.S.C. § 1495 claims irrespective of compliance with section 2513.  In the Court's view, section 1495 conclusively establishes this Court's jurisdiction "upon any claim for damages by any person unjustly convicted of an offense against the United States."  28 U.S.C. § 1495.  Section 2513 simply states what a plaintiff must prove to prevail under a section 1495 claim.  Section 2513 appears to address merits requirements, not jurisdiction. Failure to comply with section 2513 may result in dismissal, but the dismissal grounds should be predicated on a failure to state a claim, not lack of subject matter jurisdiction.  *See, e.g.*, *Spruill v. Merit Sys. Prot. Bd.*, 978 F.2d 679, 687 (Fed. Cir. 1992) ("To the extent a successful claim against the government requires compliance with all statutory elements of the claim, failure of proof of an element of the cause of action means the petitioner is not entitled to the relief he seeks. To conclude in such a case that the petitioner loses because the forum is 'without jurisdiction' is to obscure the nature of the defect. It would be more accurate to conclude that the petitioner has failed to prove the necessary elements of a cause for which relief could be granted."); *see also Nyabwa*, 696 F. App'x at 494-95 ("[T]he dismissal of Nyabwa's [section 1495] complaint is better framed as one predicated on his failure to state a claim.").

"While a court's order may arguably constitute a certificate of innocence, such an order must provide, either explicitly or by factual recitation, that a plaintiff has met the requirements of section 2513." *Id.* at 593, 597; *see also Sykes*, 105 Fed. Cl. at 233; *Winter*s, 140 Fed. Cl. at 589 ("The certificate must clearly state or show" the requirements of section 2513 are met.).

Plaintiff points to "three official records" that he contends qualify as a certificate of innocence under 28 U.S.C. § 2513.  Opp. at 40.  These records are each insufficient to meet the statute's requirements.  The first alleged "official record" appears to be statements made by the district judge during Plaintiff's sentencing hearing.  Plaintiff argues the judge's statements "reveal[] that plaintiff has lived a 'blameless' life, free of all crime" and generally reflect Plaintiff's strong character.  Opp. at 40-41.  The judge's statements are not a certificate of innocence, as they were made during sentencing and before Plaintiff's conviction was vacated.  When the district judge provided these remarks, Plaintiff had just pleaded guilty to bribery and conspiracy to commit bribery.  The district judge's statements also do not state that Plaintiff "did not commit any of the acts charged," that Plaintiff's "acts, deeds, or omissions . . . constituted no offense against the United States," or that Plaintiff "did not by misconduct or neglect cause or bring about his own prosecution."  28 U.S.C. § 2513; Opp. at 40-41.

The second alleged "official record" appears to be the district judge's memorandum opinion granting former Congressman Jefferson's petition for *habeas corpus*.  Opp. at 41-42; *see Jefferson II*.  Again, this is clearly not a certificate of innocence satisfying section 2513 as it relates to Plaintiff.  The opinion scarcely discusses Plaintiff and simply confirms that Jefferson's conduct did not amount to an "official act" under the federal bribery statute.  *Jefferson II* at 734-41.  It does not explicitly or impliedly state Plaintiff "did not commit any of the acts charged," that Plaintiff's

"acts, deeds, or omissions . . . constituted no offense against the United States," or that Plaintiff "did not by misconduct or neglect cause or bring about his own prosecution."  28 U.S.C. § 2513.

The third alleged "official record" is the district court's memorandum opinion granting Plaintiff's petition for a writ of *coram nobis*.  *See Jackson*, 371 F. Supp. 3d at 263.  Of the three proposed certificates of innocence proffered by Plaintiff, this order arguably comes the closest to satisfying section 2513.  For instance, the opinion *does* set aside Plaintiff's conviction because he pleaded guilty to "conduct that is not criminal under the bribery statute as clarified by the Supreme Court in *McDonnell*."  *Id.* at 273.  The opinion thus satisfies the 28 U.S.C. § 2513(a)(1) requirement that Plaintiff's "conviction has been . . . set aside on the ground that he is not guilty of the offense of which he was convicted."

However, the district court's opinion does not satisfy some of the remaining requirements of section 2513.  The opinion does not state that Plaintiff "did not commit any of the acts charged" or that Plaintiff "did not by misconduct or neglect cause or bring about his own prosecution."  28 U.S.C. § 2513(a)(2).  Instead, the district court emphasized the opposite, stating that "to hold that [Plaintiff] is not guilty of violating the bribery statute in these circumstances is not to express approval of his conduct, which appears to be corrupt."  *Jackson*, 371 F. Supp. 3d at 273.  The opinion confirms Plaintiff "[paid] a public official and his family large sums of money in exchange for that public official's promotion of defendant's private business interests."  *Id.* at 274.  Relevant to the current motion, the district judge further stressed that his opinion does not "hold that defendant was factually innocent of crime altogether."  *Id.* at 273 n.14.[10]  The opinion thus clearly

---

[10] During the hearing on Plaintiff's Motion to Change Venue, Plaintiff discussed footnote 14 from the district court's order.  Tr. at 8:9-9:17; *see Jackson*, 371 F. Supp. 3d at 273, n.14.  Plaintiff expressed concern that the district court judge had been misled to believe Plaintiff was aware of "other possible criminal activity" committed by Plaintiff that the district court judge had apparently considered.  *Id.*  Plaintiff suggested "we needed to make sure the judge understand what he's

states Plaintiff *did* commit the acts charged.  Furthermore, the opinion notes that Plaintiff's conduct "is clearly detrimental to the effective and fair operation of our democratic representative government and undermines public trust of elected officials." *Id.*  The opinion thus does not state that Plaintiff did not "by misconduct or neglect cause of bring about his own prosecution," as section 2513 requires.  As noted, the district court conveyed the opposite: that Plaintiff's misconduct, paying a public official to further Plaintiff's business interests, brought about his own prosecution, even if a subsequent legal decision established that Plaintiff was not guilty of bribery and conspiracy to commit bribery.

This case is similar to the facts of *Burgess v. United States*, 20 Cl. Ct. 701 (1990).  In *Burgess*, the plaintiff sued the United States under 28 U.S.C. § 1495 based on a writ of *coram nobis* granted by a district court.  *Burgess*, 20 Cl. Ct. at 703.  The plaintiff had previously pleaded guilty to bribery.  *Id.*  After the United States Court of Appeals for the Fifth Circuit ruled in a separate case that the statute under which plaintiff was convicted did not apply to non-Louisiana public officials, plaintiff successfully petitioned for a writ of *coram nobis*.  *Id.*  Like the Plaintiff here, the *Burgess* plaintiff was granted a writ of *coram nobis* based on a subsequent legal decision.

In *Burgess*, the court concluded the district court's writ of *coram nobis* "patently fail[ed] to recite any of the requirements of 28 U.S.C. § 2513[.]" *Id.* at 705.  Even incorporating the Fifth Circuit opinion into the district court's judgment, the court held that the opinion "did not state or even imply that plaintiff failed to commit any of the acts charged." *Id.*  Nor did the Fifth Circuit

---

written . . . that he's been misled, and I think that belong back in his district for him to look at." *Id.*  This Court cannot request or demand another district court to re-evaluate its prior decision.  In any event, the Court has reviewed footnote 14 from the district court's order.  Plaintiff's concerns do not impact this Court's decision.  Footnote 14 simply clarifies that the district court's opinion does not hold Plaintiff was factually innocent of crime; footnote 14 does not state Plaintiff was in fact charged with or guilty of other criminal activity.  Even omitting footnote 14, the district court's order clearly does not satisfy the requirements of 28 U.S.C. § 2513.

opinion "determine[] or state[] that neglect or misconduct did not bring about his own prosecution." *Id.* The same is true here. The district court's opinion granting Plaintiff's writ of *coram nobis* does not state or suggest Plaintiff did not commit any of the acts charged, nor does it state or suggest Plaintiff did not by misconduct or neglect cause or bring about his own prosecution. The district court's opinion does not satisfy the requirements of section 2513 and thus does not qualify as a certificate of innocence. *See Humphrey*, 52 Fed. Cl. at 598; *see also Wood*, 91 Fed. Cl. at 578-79 ("While the judgment does certify that plaintiff's conviction was reversed, it does not affirm that plaintiff did not commit any of the acts charged . . . [nor does it] include any statement indicating that plaintiff was not responsible for his own prosecution."); *Faircloth*, 2022 WL 908953, at *5 (district court order does not satisfy section 2513 because it "does not state that Plaintiff did not commit the acts underlying his Ammunition case, that his acts constituted no offense against the United States, or that he did not bring about his prosecution by misconduct or neglect"); *Winters,* 140 Fed. Cl. at 589-90 (district court order does not satisfy section 2513 in part because "[t]he Order does not state or show that Mr. Winters' own misconduct or negligence did not cause the conviction").

Plaintiff thus cannot satisfy the requirements of section 2513 as the district court's opinion is "wholly inadequate for the purposes for which it is offered." *Humphrey*, 52 Fed. Cl. at 597. As discussed above, compliance with section 2513, including a certificate of innocence, is a jurisdictional prerequisite. Accordingly, this Court lacks subject matter jurisdiction over Plaintiff's unjust conviction cause of action under 28 U.S.C. §§ 1495 and 2513. As further described in Section II.B below, Plaintiff's unjust conviction claim cannot be transferred to the Western District of Kentucky and thus must be dismissed pursuant to Rules 12(b)(1) and 12(h)(3).

II.     The Transferee Court Has Jurisdiction Over Some of Plaintiff's Claims

As this Court lacks subject matter jurisdiction over all causes of action in Plaintiff's Complaint, each cause of action is eligible to be considered for transfer to the United States District Court for the Western District of Kentucky (Western District of Kentucky), pursuant to 28 U.S.C. § 1631.  In deciding Plaintiff's Motion to Transfer, this Court must assess whether Plaintiff could have brought his claims in the proposed transferee court.  This question depends on whether the transferee court has jurisdiction over the case.  *Metzinger*, 20 F.4th at 780-81 ("A proper 28 U.S.C. § 1631 transfer requires both that the transferor court lack jurisdiction and that the transferee court have it."); *Fisherman's Harvest,* 490 F.3d at 1374 ("The statute [28 U.S.C. § 1631] requires the transferor court to determine both that it lacks jurisdiction and that the transferee court possesses jurisdiction.").

As noted, transfer of an action under section 1631 is not an all-or-nothing proposition; the Court may transfer some claims that meet the transfer conditions and decline to transfer other claims that do not.  *See United States v. Cnty. of Cook*, 170 F.3d 1084, 1089 (Fed. Cir. 1999); *see also Reilly v. United States*, 93 Fed. Cl. 643, 650-51 (2010).  The Court must therefore analyze whether the transferee court — here, the Western District of Kentucky — has jurisdiction over any of Plaintiff's claims.  *See* Transfer Mot. at 1.  The Court concludes that the Western District of Kentucky likely has jurisdiction over some, but not all, of Plaintiff's claims. [11]

---

[11] The Court is cognizant that "a district court would be well-equipped to assess its own jurisdiction."  *Mone v. United States*, 766 F. App'x 979, 986 (Fed. Cir. 2019).  A court's assessment of another court's subject matter jurisdiction is an inexact science, for "[i]t is fundamental . . . that one court cannot confer jurisdiction or determine another court's jurisdiction."  *Bianchi v. United States*, 68 Fed. Cl. 442, 451-52 (2005).  Accordingly, "the lack of familiarity a court will have with matters outside its jurisdictional competence should counsel against refusing to transfer a case unless it is a sure loser . . . particularly with respect to timeliness . . . requirements."  *De La Cruz Jimenez v. United States*, 2021 WL 5373574, at *5 (Fed. Cl. Nov. 18, 2021) (internal citations and quotations omitted).

A.  <u>The Transferee Court Has Jurisdiction Over Plaintiff's Tort and Constitutional Claims</u>

As discussed above, Plaintiff's Complaint includes several claims sounding in tort, including law enforcement and prosecutorial misconduct, civil conspiracy, misrepresentation/concealment, fraud, and intentional infliction of emotional distress.  *See* Complaint at 34-45.  The Federal Tort Claims Act (FTCA) states that "the district courts . . . shall have exclusive jurisdiction of civil action on claims against the United States" sounding in tort.  28 U.S.C. § 1346(b)(1); *see also Canuto v. United States*, 615 F. App'x 951, 953 (Fed. Cir. 2015) ("District courts, not the [U.S. Court of Federal Claims], have jurisdiction over FTCA claims[.]").  The Western District of Kentucky thus likely has jurisdiction over Plaintiff's tort claims.[12]

Plaintiff's Complaint also includes claims the Defendant, and in particular federal officers, violated his constitutional rights.  *See* Complaint at 46-49.  Plaintiff argues his constitutional claims take the form of a *Bivens* action.  *See* Opp. at 38-39.  It is well-established that Federal

---

[12] Several federal statutes may affect Plaintiff's ability to pursue his tort claims in the Western District of Kentucky; however, as those statutes are not jurisdictional prerequisites, the Court need not address them in its section 1631 analysis.  For example, 28 U.S.C. § 2675 requires an individual present a tort claim to a federal agency before filing an action in district court.  28 U.S.C. § 2675.  Under Sixth Circuit jurisprudence, however, section 2675's requirements are not jurisdictional.  *See Copen v. United States*, 3 F.4th 875 (6th Cir. 2021) (section 2675's sum certain rule is mandatory claims-processing rule, not jurisdictional rule); *Kellom v. Quinn*, Nos. 20-1003/1222, 2021 WL 4026789, at *3 (6th Cir. Sept. 3, 2021) (*Copen*'s holding applies to all of section 2675's requirements).  Failure to comply with section 2675 may preclude a plaintiff from litigating a tort claim beyond the complaint, but it does not deprive a district court from jurisdiction in the first instance.  The same holds true for 28 U.S.C. § 2401, which states "[a] tort claim against the United States shall be forever barred unless" it is presented to the appropriate agency within two years of the claim accruing.  28 U.S.C. § 2401(b).  "Section 2401(b) is not a jurisdictional requirement." *United States v. Wong*, 575 U.S. 402, 412 (2015).

district courts have subject matter jurisdiction over *Bivens* claims.[13]  *See Bivens*, 403 U.S. at 397; 28 U.S.C. § 1331.  The Western District of Kentucky thus likely has jurisdiction over Plaintiff's constitutional causes of action.

### B. The Transferee Court Does Not Have Jurisdiction Over Plaintiff's Detrimental Reliance, Unjust Conviction, and Criminal Law Claims

While the transferee court likely has subject matter jurisdiction over Plaintiff's tort and constitutional causes of action, it likely lacks subject matter jurisdiction over his detrimental reliance, unjust conviction, and criminal law claims.

*First*, the Western District of Kentucky lacks subject matter jurisdiction over Plaintiff's detrimental reliance cause of action for much the same reason this Court lacks subject matter jurisdiction: detrimental reliance depends on a contract implied in law, and the United States has not consented to suit under implied-in-law contracts.  *See Briddell v. United States*, No. 11-889, 2012 WL 3268658, at *5 (Fed. Cl. Aug. 10, 2012) (declining to transfer promissory estoppel cause of action because "[a] district court would not have had jurisdiction to hear plaintiff's Counts I and II for breach of an express or implied contract"); *Hoke Co., Inc. v. Tenn. Valley Author.*, 661 F. Supp. 740, 745 (W.D. Ky. 1987) ("As a general proposition of federal law, there is no cause of action in promissory estoppel against the federal government.").

*Second*, the Western District of Kentucky lacks jurisdiction over Plaintiff's 28 U.S.C. § 1495 unjust conviction cause of action.  By its own terms, section 1495 confers jurisdiction "to render judgment upon any claim for damages by any person unjustly convicted of an offense against the United States and imprisoned" only on the U.S. Court of Federal Claims, not district

---

[13] Indeed, the Western District of Kentucky provides a template "Complaint for Violation of Civil Rights" specifically for *Bivens* lawsuits. *See* https://www.kywd.uscourts.gov/forms/non-prisoner-1983bivens-complaint-form.

courts.  28 U.S.C. § 1495.  The Western District of Kentucky therefore does not have subject matter jurisdiction over Plaintiff's section 1495 cause of action.[14]

*Third*, the Western District of Kentucky lacks jurisdiction over Plaintiff's criminal law claims, as identified in Section I.A.  *See* Compl. at 10-15, 19-30.  "The proper forum" for resolving issues relating to Plaintiff's criminal prosecution and conviction "is the district court in which they arose, or the appellate court that reviews the district court's decisions" — in this case, the United States District Court for the Eastern District of Virginia or the United States Court of Appeals for the Fourth Circuit.  *Seals-Bey*, 116 Fed. Cl. at 122; *Kania v. United States*, 227 Ct. Cl. 458, 465-66 (1981) (appropriate court to "police" criminal proceedings are the courts where they were or are pending); Compl. at 13-14.

Accordingly, Plaintiff's detrimental reliance, unjust conviction, and criminal law claims may not be transferred to the Western District of Kentucky pursuant to 28 U.S.C. § 1631.

III.   Transfer is In the Interest of Justice

The final requirement for transfer under section 1631 is that transfer is in the interest of justice.  *Brown*, 74 Fed. Cl. at 550.  Deciding whether transfer is in the interest of justice "rests within the sound discretion of the transferor court."  *Spencer*, 98 Fed. Cl. at 359.  In this case, it is in the interest of justice to transfer Plaintiff's tort and constitutional claims to the Western District of Kentucky.[15]

Plaintiff's tort and constitutional causes of action relate to alleged conduct by federal officials in the mid-2000s, including purported prosecutorial misconduct and fraud, among other

---

[14] Plaintiff's 28 U.S.C. § 1495 cause of action is largely duplicative of his tort claims alleging prosecutorial misconduct, civil conspiracy, misrepresentation/concealment, and fraud.

[15] Counsel for Defendant likewise agreed it would be in the interest of justice to transfer Plaintiff's claims that may be time barred if otherwise dismissed.  *See* Tr. at 5:24-6:13.

offenses, that Plaintiff alleges resulted in his plea of guilty to bribery and conspiracy charges. *See generally* Compl. at 30-45, 47-50. However, Plaintiff contends his realization of his alleged right to relief for these alleged offenses ripened on March 27, 2019, when the district court granted Plaintiff's petition for a writ of *coram nobis*. *See Jackson*, 371 F. Supp. 3d at 257; *see also* Compl. at 18 ("I also decided to investigate how and why I was charged with 'any' crime in this case, and to see if any more of my CIVIL Right(s) have been violated by the U.S. Department of Justice."), *id.* ("In June of 2019, being made keenly aware of the unlawful and illegal convictions made against me by the US government, . . . I began to search the internet and other sources of information for the 'TRUTH' about my case . . . ."), at 32-33. In Plaintiff's view, the district court's decision confirmed that Plaintiff's conviction had been unlawful and improper, entitling him to relief. *See* Compl. at 16-21. Taking Plaintiff's allegations as true, Plaintiff's tort and constitutional claims thus likely accrued on March 27, 2019. *See Bolduc v. United States*, 72 Fed. Cl. 187, 192 (2006) ("A claim accrues 'as soon as all events have occurred that are necessary to enable the plaintiff to bring suit.'") (quoting *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003)); *see also Amburgey v. United States*, 733 F.3d 633, 637 (6th Cir. 2013) (claims accrue "when the plaintiffs knew enough about the causes of their respective injuries to put them on inquiry notice of a possible legal claim"); *Hertz v. United States*, 560 F.3d 616, 618 (6th Cir. 2009).

The claim accrual date is important because a tort claim against the United States "shall be forever barred unless it is presented . . . to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing . . . of notice of final denial of the claim by the agency." 28 U.S.C. § 2401(b). A prospective plaintiff must therefore present a tort claim against the United States to a federal agency within two years of the claim accruing; and if the agency denies the claim, the plaintiff must institute an action

within six months of the denial.  Otherwise, the claim is barred.  Relatedly, 28 U.S.C. § 2675 states a tort claim against the United States may not be filed "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied." 28 U.S.C. § 2675(a).  A prospective plaintiff in a tort action against the United States must therefore satisfy these requirements.

Plaintiff complied with these statutory time limits.  His tort claims accrued on March 27, 2019, when the district court vacated his criminal convictions.  *Jackson*, 371 F. Supp. 3d at 257. He submitted his tort claim to the U.S. Department of Justice on March 16, 2021 — within two years of claim accrual.  *See* Compl., Ex. 1 (ECF No. 1-1) at 6, 10-11.  The Department of Justice denied Plaintiff's claim on November 19, 2021.  *Id.* at 6.  Plaintiff then timely filed his complaint within six months of the agency's denial, on May 13, 2021.  *See* Compl.  Plaintiff thus timely pursued his tort claims consistent with the statutory deadlines presented by 28 U.S.C. §§ 2401(b) and 2675(a).

If this Court simply dismisses Plaintiff's tort claims for lack of subject matter jurisdiction, requiring Plaintiff re-file in an appropriate forum, his tort claims would be barred under 28 U.S.C. § 2401(b), because he will have instituted a new action over six months after the Department of Justice denied his claim for administrative relief.  *See* 28 U.S.C. § 2401(b).  If, however, this Court transfers Plaintiff's tort claims under section 1631, Plaintiff will maintain his timely May 13, 2021 filing date.  28 U.S.C. § 1631 (after transfer, the action "shall proceed as if it had been filed in [the transferee court] on the date upon which it was actually filed [in the transferor court]").

It is in the interest of justice to transfer Plaintiff's tort claims so he maintains his timely filing date.  Plaintiff has diligently sought to adjudicate his tort claims, first before the Department of Justice and now before the federal judiciary.  Rather than dismissing Plaintiff's claims for lack

of subject matter jurisdiction, thereby preventing Plaintiff from pursuing relief on the merits, this Court concludes it is in the interest of justice to transfer Plaintiff's tort claims. *See, e.g.*, *Tex. Peanut Farmers v. United States*, 409 F.3d 1370, 1374 (Fed. Cir. 2005) ("A compelling reason for transfer is [if plaintiff] will be time barred if his case is dismissed and thus has to be filed anew in the right court.") (quoting *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999) (internal quotations omitted); *Leffebre v. United States*, 129 Fed. Cl. 48, 55 (2016) ("Transfer is in the interest of justice when the plaintiff has a viable interest in preserving the original filing date."); *AGP, L.P. v. United States*, 41 Fed. Cl. 607, 609-10 (1998) ("Because the possibility exists that plaintiffs' claim could be time barred if we dismiss and they are required to re-file, the interest of justice would dictate transfer of the claim rather than dismissal.").  As Plaintiff's constitutional claims — which are closely intertwined with his tort claims — may be properly heard in the transferee court, the Court transfers those claims as well.

The Court therefore determines it is in the interest of justice to transfer Plaintiff's tort and constitutional claims to the Western District of Kentucky.  Specifically, transfer is appropriate under 28 U.S.C. § 1631 because this Court lacks jurisdiction over those claims and the Western District of Kentucky likely has jurisdiction.  *See, e.g.*, *Brown*, 74 Fed. Cl. at 549-51 (transferring plaintiff's tort claims under section 1631); *De La Cruz Jimenez*, 2021 WL 5373574, at *4-6 (transferring plaintiff's tort and constitutional claims under section 1631); *Stephenson v. United States*, 58 Fed. Cl. 186, 194 (2003) (transferring plaintiff's constitutional claims "to preserve the timely filing of plaintiffs' complaint in another federal court").

*        *        *        *

<u>CONCLUSION</u>

For the reasons explained above, Plaintiff's Motion to Change Venue (ECF No. 10) is **GRANTED in part**. The Court **DIRECTS** the Clerk of Court to transfer Plaintiff's tort and constitutional claims (Compl. at 35-46, 47-50) to the United States District Court for the Western District of Kentucky. Defendant's Motion to Dismiss (ECF No. 7) is **GRANTED in part.** Specifically, the Court dismisses Plaintiff's detrimental reliance claim, 28 U.S.C. § 1495 unjust conviction claim, and criminal law claims pursuant to Rules 12(b)(1) and 12(h)(3).[16] (Compl. at 10-15, 19-30, 32, 46-47.) The remainder of Defendant's Motion to Dismiss is **DENIED as MOOT.** The Clerk of Court is **DIRECTED** to enter judgment accordingly.


IT IS SO ORDERED.



*Eleni M. Roumel*

ELENI M. ROUMEL

Judge



September 19, 2022
Washington, D.C.

---

[16] Even if this Court had jurisdiction over Plaintiff's 28 U.S.C. § 1495 claim, it would nevertheless still be required to dismiss the claim under Rule 12(b)(6) for failure to state a claim. *See Anaheim Gardens v. United States*, 444 F.3d 1309, 1315 (Fed. Cir. 2006) ("The trial court may dismiss *sua sponte* under Rule 12(b)(6)."). As discussed above, Plaintiff failed to provide a certificate of innocence satisfying section 2513; without a compliant certificate of innocence, Plaintiff will have failed to state a claim for unjust conviction under 28 U.S.C. § 1495.

41